# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Deloatch,            :
               Petitioner     :
                          :
       v.                    :    No. 1684 C.D. 2018
                          :    Argued: November 14, 2019
Workers' Compensation Appeal    :
Board (City of Philadelphia),      :
               Respondent    :

**BEFORE:**    **HONORABLE P. KEVIN BROBSON, Judge**
                   **HONORABLE ELLEN CEISLER, Judge**
                   **HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge**

**OPINION BY JUDGE BROBSON**        **FILED: January 3, 2020**

Wayne Deloatch (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated December 11, 2018. The Board reversed the decision and order of a Workers' Compensation Judge (WCJ), which granted Claimant's claim petition for benefits under Sections 108(r) and 301(f) of the Workers' Compensation Act (Act).[1] The sole issue before this Court is whether Claimant has established that he developed a compensable occupational disease in the form of lung cancer as provided by Sections 108(r) and 301(f) of the Act. For the reasons that follow, we reverse.

## I. BACKGROUND

Claimant worked as a firefighter for the City of Philadelphia (Employer) from December 12, 1988, until he retired on November 1, 2008.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of October 17, 1972, P.L. 930 & the Act of July 27, 2011, P.L. 251, 77 P.S. §§ 27.1(r), 414, respectively.

(Certified Record (C.R.), Item No. 6 at 3.)  In 2011, Daniel Stermand, M.D., diagnosed Claimant with lung cancer, for which Claimant later received treatment. (Reproduced Record (R.R.) at 20-22, 88.)[2]

On December 12, 2012, Claimant filed a claim petition alleging that he suffered from non-small cell lung cancer resulting from direct exposure to IARC[3] Group 1 carcinogens while working as a firefighter with Employer.  (C.R., Item No. 2 at 2.)  Claimant sought payment of medical bills related to treatment of his non-small cell lung cancer.  (*Id.*)  Employer, thereafter, filed an answer denying all allegations in the claim petition.  (C.R., Item No. 4.)  In support of his claim petition, Claimant provided his own deposition testimony, a medical report from Virginia Weaver, M.D., as well as a medical report from and deposition testimony of Barry L. Singer, M.D.   In opposition to Claimant's claim petition, Employer presented the deposition testimony of Tee Guidotti, M.D., M.P.H., as well as a medical report from Howard Sandler, M.D.

## A.   Summary of Evidence Presented

### 1.  *Claimant's Deposition Testimony*

Claimant testified at a deposition on January 29, 2013.  According to Claimant, he worked for Employer as a firefighter for approximately twenty years. (R.R. at 6.)  Employer gave Claimant a physical examination prior to hiring him.  As a result of the examination, Employer did not place any restrictions on Claimant's ability to work.  (*Id.*)  Further, Claimant was never diagnosed with cancer at any

---

[2] The reproduced record in this matter follows a numbering format of "R0001, R0002," etc., and is not in compliance with Pennsylvania Rule of Appellate Procedure 2173, which directs the pages of the reproduced record to be numbered using Arabic numerals followed by a lower case letter "a"—*i.e.*, "1a, 2a, 3a," etc.  When citing to the page numbers of the reproduced record herein we shall omit the "R" and any zeros preceding the page number.

[3] IARC refers to the International Agency for Research on Cancer.

2

point during his employment. (*Id.* at 7.) Over the course of his career, Claimant worked at three different fire stations. None of these stations contained a diesel fuel emissions capture system. (*Id.* at 10.) At the beginning and end of each shift, firefighters were required to start the fire engine trucks and leave them running for approximately 15-20 minutes. (*Id.* at 10-11.) Claimant, therefore, saw and smelled diesel fuel emissions at each shift during the twenty years of his employment. (*Id.* at 10.) The ceilings and walls in each fire station were covered with soot and grime. (*Id.* at 12.)

During Claimant's firefighting career, he fought approximately 200-300 fires, including building, house, car, dumpster, trash, grass, and field fires, which exposed him to smoke. (*Id.* at 13, 14-15, 18.) Claimant sometimes wore a self-contained breathing apparatus (SCBA) when responding to a fire. (*Id.* at 16.) SCBAs provide the wearer with clean air for approximately 20-30 minutes depending on the individual and the amount of work involved. (*Id.*) According to Claimant, Employer did not fit-test the SCBAs. (*Id.*) Claimant did not use the SCBA during exterior firefighting—*i.e.*, outdoor firefighting—or overhaul, which entailed "ripping of walls, ceilings, searching for any hidden fire and extinguishing that if it's visible." (*Id.* at 15, 17.) After exposure to each fire incident, Claimant's body would be coated in soot, and Claimant would often find soot in his nasal secretions up to a week after exposure. (*Id.* at 19.) Claimant further testified that he stopped smoking cigarettes in 2011, but had a 30 to 35-year-long smoking history. (*Id.* at 25.) During that period, Claimant recalled smoking only one pack of cigarettes per week. (*Id.*) Firefighters were permitted to smoke in the fire stations, and Claimant worked with smokers during his career as a firefighter. (*Id.* at 26.)

3

## 2. *Medical Report from Virginia Weaver, M.D.*

Claimant submitted a medical report from Dr. Weaver, who is board certified in internal medicine and occupational medicine. (*Id*. at 186.) Dr. Weaver opined that firefighters are exposed to IARC Group 1 carcinogens in the course of their work, many of which are found in smoke from burning structures, including buildings and automobiles. (*Id*. at 179.) She further stated that although firefighters use protective equipment, the protection is incomplete because firefighters routinely observe black soot on their skin and in nasal discharges after major fires. (*Id*.) Further, until recently, most firefighters routinely removed their respiratory protection during the overhaul process. (*Id.*) Dr. Weaver did not provide any specific testimony relating to the causal relationship between a firefighter's exposure to certain IARC Group 1 carcinogens and the development of lung cancer.

## 3. *Deposition Testimony of Barry L. Singer, M.D.*

Claimant submitted the deposition testimony of Dr. Singer, who is board certified in internal medicine, hematology, and oncology. (*Id*. at 92.) Dr. Singer is not a specialist in occupational medicine, toxicology, or epidemiology. (*Id.* at 251-54.) Dr. Singer's practice is mainly patient care, and he does not engage in primary research nor has he ever published any materials on the etiology of cancer. (*Id*. at 256.) Since 2008, Dr. Singer has been reviewing cases involving workers' compensation claims for cancer. (*Id*. at 249.) In evaluating cases involving firefighters, Dr. Singer reviews affidavits concerning each firefighter's exposures and medical and family history. (*Id*. at 249-50.) Dr. Singer has not performed physical evaluations on any of the firefighters for whom he was asked to provide medical opinions; however, by reviewing the IARC monographs, academic materials concerning firefighters' exposure to carcinogens, medical records, and family history, Dr. Singer has been able to provide opinions about the cause of each

4

firefighter's cancer. (*Id*. at 250.) Dr. Singer's methodology for forming his opinion in these cases is called "differential diagnosis," which requires that Dr. Singer list all causal possibilities for a patient's diagnosis, rule out certain possibilities, and eventually arrive at a final or most probable diagnosis. (*Id*. at 283.) Differential diagnosis, Dr. Singer opined, is the only viable method for evaluating firefighter cancer cases. (*Id*. at 283-84.) According to Dr. Singer, firefighters are exposed to numerous IARC Group 1 carcinogens, such as arsenic, which is found in diesel exhaust and smoke. (*Id*. at 285.)

Dr. Singer admitted that there are carcinogens in cigarette smoke that most likely cause changes in lung tissue, resulting in formation of cancerous cells. (*Id*. at 310.) In fact, Dr. Singer agreed that approximately sixty of the one hundred and twenty carcinogens present in IARC's Group 1 carcinogen list are found in cigarette smoke. (*Id*. at 368.) Dr. Singer also agreed that an individual who smokes eighty packs of cigarettes per year has a 400-fold increase in the risk of lung cancer, as well as cancer affecting the head and neck. (*Id*. at 310.) With respect to firefighters' exposure to carcinogens during employment, Dr. Singer agreed with the IARC's conclusion that (1) less than half of all responses to fires are, in fact, fire-related; (2) of those responses that are fire-related, less than half involve observable flames; and (3) a very small percentage of firefighters' time—*i.e.*, one to two percent—is spent fighting fires. (*Id*. at 366-67.) Dr. Singer also agreed that SCBAs are designed to reduce exposure to particles by one thousand percent. (*Id*. at 368.)

### 4. *Medical Report from Barry L. Singer, M.D.*

Claimant also submitted a medical report from Dr. Singer. In that report, Dr. Singer opined that firefighters are routinely exposed to "many known or suspected lung carcinogens." (*Id*. at 89.) Dr. Singer discussed studies that found an

5

increased risk for lung cancer in the firefighting profession. (*Id*.) Thereafter, Dr. Singer concluded that, based on Claimant's medical records, Claimant's exposure to carcinogens while working for Employer was a "substantial contributing factor in the development of his lung cancer." (*Id*.)

### 5. *Deposition Testimony of Tee Guidotti, M.D., M.P.H.*

In opposition, Employer submitted the deposition testimony of Dr. Guidotti, who is board certified in internal medicine, pulmonary medicine, and occupational medicine. (*Id*. at 1109.) Dr. Guidotti also has a non-medical diploma in toxicology, is trained in epidemiology, and has investigated the potential relationships between occupational and environmental exposures associated with firefighting and cancer. (*Id*. at 917-18, 922-23.) Dr. Guidotti reviewed a subset of Dr. Singer's reports involving firefighters and some of his deposition testimony in firefighter cancer cases in order to determine the appropriateness of Dr. Singer's methodology and the validity of his opinions. (*Id*. at 927-28.) With respect to specific firefighters, their diagnoses, or cancer exposure, Dr. Guidotti offered no opinion. (*Id*. at 1055-56.)

Concerning Dr. Singer's methodology, Dr. Guidotti opined that he could not discern what, if any, methodology Dr. Singer used to form his opinions. (*Id*. at 929.) In response to a question on whether Dr. Singer's method of drawing inferences from the volume of support for, as opposed to against, a proposition was an appropriate method for determining the sufficiency of epidemiological studies, Dr. Guidotti answered in the negative. (*Id*. at 933.) Dr. Guidotti also opined that Dr. Singer had no expertise on how general causation is proved. (*Id*.) Further, where Dr. Singer's use of meta-analyses is concerned, Dr. Guidotti opined that one should not rely on meta-analyses to reach a conclusion on cause and effect because meta-analyses do not summarize all the studies addressed in any meaningful sense

6

nor do they address the nuance or bias of any given study. (*Id*. at 937-38.) Dr. Guidotti agreed that the IARC is the authoritative world body in recognizing carcinogens and that the IARC has characterized firefighting as possibly carcinogenic. (*Id*. at 983, 1012.) Dr. Guidotti opined, however, that smoking cigarettes may add to the risk of exposure to carcinogens that are similar to those firefighters could be exposed to during employment. (*Id*. at 991-92.)

### 6. *Medical Report from Howard Sandler, M.D.*

Employer submitted a medical report of Dr. Sandler, a licensed physician specializing in occupational and environmental medicine. (*Id*. at 881.) Dr. Sandler noted that the IARC has found sufficient evidence of a causal link between diesel exhaust and lung cancer. (*Id.* at 891.) Dr. Sandler opined, however, that Dr. Singer provided "no scientifically-reliable methodology" that could have led Dr. Singer to conclude that there is a causal link between firefighting and lung cancer. (*Id*.) With respect to Claimant's smoking history, Dr. Sandler noted that in one instance Claimant's records indicate that he smoked cigarettes for forty-five years. (*Id*. at 883.) Claimant's medical records also indicate that Claimant reduced his smoking habit from a peak of one pack *per day*. (*Id*. at 884.) These medical records stand in contrast to Claimant's testimony that he smoked cigarettes for approximately 30-35 years and only smoked one pack *per week*, and the records indicate a significantly higher level of smoking. (*Id*.) With respect to Claimant's specific case, Dr. Sandler opined that epidemiologic evidence does not support the conclusion that exposure to arsenic, asbestos, benzene, and other IARC Group 1 carcinogens was a substantial factor in causing Claimant's lung cancer. (*Id*. at 894.) Accordingly, Dr. Sandler opined that Claimant's lung cancer was not caused by occupational exposure to carcinogens, but most likely by Claimant's personal risk factors—specifically, his smoking history. (*Id*. at 893-94.)

7

## B. First WCJ Decision

By decision and order circulated on October 31, 2014 (First WCJ Decision), the WCJ dismissed the claim petition. (C.R., Item No. 6.) In so doing, the WCJ rejected Claimant's testimony regarding his history of cigarette smoking as less than credible but otherwise found Claimant's testimony credible but not persuasive or competent as to the medical issue of causation. (*Id.*, Finding of Fact (F.F.) No. 16.) The WCJ also accepted that Claimant was exposed to IARC Group 1 carcinogens in the course of his career as a firefighter and paramedic and noted that Employer did not present evidence to the contrary. (*Id.*, F.F. No. 18.) The WCJ, however, found that Claimant is not entitled to the presumption of Section 301(f) of the Act that his lung cancer arose during the course of his employment as a firefighter. (*Id.*, F.F. No. 19.) Rather, Claimant's claim was subject to general causation principles. (*Id.*, F.F. No. 20.) As to the credibility of the other witnesses, the WCJ issued the following findings of fact:

> 21. This Judge rejects as neither credible nor competent Dr. Singer's opinion that exposure to Group [1] carcinogens in the course of his employment as a firefighter was a substantial contributing factor in causing Claimant's non-small cell lung cancer. In so finding, this Judge notes the following:
>
> . . . .
>
> d. Dr. Singer conceded that the number one cause of lung cancer is cigarette smoking.
>
> e. Dr. Singer has never designed a study protocol, is not engaged in primary cancer research, and has never published on the etiology of cancer or on firefighters.
>
> f. Dr. Singer is not an expert in occupational disease medicine, toxicology or epidemiology. He is an oncologist whose career focus has been the detection and treatment of cancer, not investigating the cause of cancer.

8

g. He did not know the methodologies to use in attempting to link a given exposure to a given cancer, used by the [Environmental Protection Agency], the Veterans Administration, the IARC[,] the National Academy of Sciences, the American Medical Association and by the Federal Courts. He later reviewed the methodology for providing an opinion set forth in Table 3-2 of the American Medical Association's Guides to the Evaluation of Causation and testified that his methodology followed the steps set forth in that document. This WCJ finds that this testimony was not persuasive, as he acknowledged that he was not aware of the existence of the American Medical Association's Guides to the Evaluation of Causation prior to the December 21, 2012 deposition and that these excerpts were provided to him in between December 21, 2012[,] and January 14, 2013.

h. He was not able to cite authority for his assertion that the differential diagnosis methodology is the accepted methodology for determining a potential causative relationship between a given agent and a given cancer.

. . . .

22. This Judge accepts the opinions of Dr. Sandler and Dr. Guidotti as more credible, competent, and persuasive than the opinion of Dr. [Singer] for the following reasons:

. . . .

d. The discussion by Dr. Sandler and Dr. Guidotti with respect to causation determinations and methodology are consistent one with the other. Both physicians articulated a detailed familiarity with published epidemiologic data concerning cancer risks in firefighters.

(*Id.*, F.F. Nos. 21-22.) Based on the above, the WCJ found "that the credible, competent evidence of record fails to establish that Claimant's non-small cell lung cancer was caused by his work as a firefighter." (*Id.*, F.F. No. 23.)

9

## C. First Board Decision

Claimant appealed the First WCJ Decision to the Board, which reversed and remanded.[4] (C.R., Item No. 9.) In coming to its decision to reverse the WCJ's decision, the Board concluded that Claimant established entitlement to the statutory presumption and that Employer failed to provide evidence sufficient to rebut the presumption. (*Id*. at 10.) The Board remanded the matter to the WCJ to make findings of fact and conclusions of law regarding an award and any recoverable lien, taking into consideration a relevant subrogation agreement. (*Id*. at 11.)

## D. Second WCJ Decision

On remand, the WCJ granted Claimant's claim petition and awarded medical benefits—as directed by the Board—and issued new findings of fact and conclusions of law regarding only the amount of the award and the subrogation lien. (C.R., Item No. 13.) The WCJ included a sentence in the remand decision (Second WCJ Decision) incorporating a majority of the findings of fact set forth in the First WCJ Decision, which included summaries of the testimony and medical reports presented, along with credibility determinations relating to causation. (*Id.* at 4, F.F. No. 1.) The WCJ also issued the following new finding of fact concerning the Board's discussion of the medical evidence presented:

> 2. With respect to credibility determinations regarding the medical evidence of record in the October 31, 2014 Decision, this Judge notes that the [Board] determined that Dr. Sandler's opinion "lacks the certainty necessary to overcome the presumption that Claimant's cancer was caused by firefighting. . . . [T]he burden never shifted back to Claimant, and any

---

[4] We note that the Board issued its first decision prior to this Court's decision in *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 144 A.3d 1011 (Pa. Cmwlth. 2016) (en banc) (*Sladek I*), and our Supreme Court's decision reversing and remanding *Sladek I* in *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 195 A.3d 197 (Pa. 2018) (*Sladek II*).

> shortcomings, found by the WCJ, in Dr. Singer's testimony on the issue of causation do not impact Claimant's entitlement to relief." (WCAB Decision, p. 11 of 12[.])

(Second WCJ Decision at 4, F.F. No. 2.) The WCJ concluded that Claimant met his burden to prove that he had a compensable injury under Sections 108(r) and 301(f) of the Act. (Id. at 5.) Employer appealed the Second WCJ Decision to the Board, which reversed based on its application of *Sladek II*.

## II. DISCUSSION

On appeal,[5] Claimant argues that the Board committed an error of law by reversing the Second WCJ Decision. Specifically, Claimant contends that he was entitled to the statutory presumption under Section 301(f) of the Act and that Employer failed to rebut that presumption. Employer responds by arguing that the Board correctly concluded that Claimant did not establish that he suffered from an occupational disease under Section 108(r) of the Act and, therefore, failed to establish his entitlement to the evidentiary presumption provided by Section 301(f) of the Act.

### A. Occupational Disease Claims Under the Act[6]

*1. Relevant Statutory Provisions*

Section 301(c)(2) of the Act, *as amended*, 77 P.S. § 411(2), provides that a compensable "injury" includes any "occupational disease as defined in [S]ection 108 of this [A]ct." In turn, Section 108 of the Act identifies a number of occupational diseases, including cancer, which is a compensable injury when it is

---

[5] This Court's review is limited to a determination of whether an error of law was committed, whether findings of fact are supported by substantial evidence, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

"caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by [IARC]."

Section 301(f) of the Act establishes a special evidentiary presumption that applies when the employee is a firefighter who suffers from an occupational disease in the form of cancer. Section 301(f) provides, in relevant part:

> *Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act] relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting*. . . . Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, claims filed pursuant to cancer suffered by the firefighter under [S]ection 108(r) [of the Act] may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease. *The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.*

77 P.S. § 414 (emphasis added). In sum, to establish that a firefighter's cancer is an occupational disease compensable under the Act, the firefighter must show that his type of cancer is one "caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen." 77 P.S. § 27.1(r). Once a firefighter establishes that his type of cancer is an occupational disease, he may take advantage

12

of the statutory presumption in Section 301(f) of the Act, provided that the firefighter demonstrates that he (1) has served continuously as a firefighter for four years or more, (2) had direct exposure to a Group 1 carcinogen linked to his type of cancer, (3) passed a physical examination—either before asserting a claim or engaging in firefighting duties—which revealed no evidence of cancer, and (4) filed the claim within 300 weeks of his last day of employment. The presumption relieves the firefighter of the need to prove that his workplace exposure, and not another cause, was the actual and specific cause of his cancer. *See* 77 P.S. § 413. The employer may rebut this presumption through "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." 77 P.S. § 414.

### 2. *Sladek II*

In *Sladek II*, our Supreme Court expounded upon the respective burdens of proof in disputes concerning whether a claimant has a compensable occupational disease under Sections 108(r) and 301(f) of the Act. Pursuant to the Supreme Court's decision in *Sladek II*, a claimant must first prove that he suffers from an occupational disease under Section 108(r) of the Act. In order to meet this burden, the claimant must "establish a *general causative* link between the claimant's type of cancer and a Group 1 carcinogen." *Sladek II*, 195 A.3d at 208 (emphasis added). "In other words, the claimant must produce evidence that it is *possible* that the carcinogen in question caused the type of cancer with which the claimant is afflicted." *Id.* (emphasis in original). In order to establish this general causative link, the claimant

13

may submit epidemiological evidence[7] in support of his claims. If, however, the claimant introduces an "expert opinion [that] does not satisfy the *Frye*[8] standard, [the claimant] cannot carry his evidentiary burden of proof to establish an 'occupational disease' under Section 108(r)" of the Act. *Sladek II*, 195 A.3d at 210. The employer may submit its own epidemiological evidence to counteract the claimant's evidence. *Id*. (holding that if employer submits evidence which Board concludes is more credible on general causation, that evidence "carr[ies] the day without the burden of proof with respect to the evidentiary presumption ever shifting to the [employer] to prove specific causation"). Provided that the claimant demonstrates, among other requirements, the required general causative link, the claimant is entitled to the statutory presumption provided by Section 301(f) of the Act.

The burden then shifts to the employer to rebut the presumption. To do so, the employer must identify "(1) the specific causative agent of claimant's cancer, and [prove that] (2) exposure to that causative agent did not occur as a result of his or her employment as a firefighter." *Sladek II*, 195 A.3d at 209. "In other words, the language of Section 301(f) [of the Act] requires the employer to produce a medical opinion regarding the specific, non-firefighting related cause of claimant's cancer." *Id*. The employer may not use generalized epidemiological evidence to rebut the statutory presumption. *Id*. at 210.

---

[7] "Epidemiology deals with, *inter alia*, the identification of potentially causative associations in various populations between possible causative agents and the resulting incidence of particular diseases and seeks to generalize those results." *Sladek II*, 195 A.3d at 208.

[8] *Frye v. U.S.*, 293 F. 1013, 1014 (D.C. Cir. 1923) ("[T]he thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.").

## B. Application to This Matter

Applying the foregoing, to receive the statutory presumption, Claimant had to prove first that his lung cancer is an occupational disease within the meaning of Section 108(r) of the Act. The WCJ rejected Dr. Singer's opinion as not credible or competent as to causation; however, the WCJ accepted that Claimant was exposed to IARC Group 1 carcinogens in the course of his employment, including, *inter alia*, diesel fumes/exhaust. (First WCJ Decision at 17, F.F. No. 18.) Further, the WCJ accepted Dr. Sandler's opinion that the IARC has found sufficient evidence of a causal link between diesel exhaust, which is an IARC Group 1 carcinogen, and lung cancer. (*Id.* at 12, F.F. No. 7j; R.R. at 891.) Employer has not submitted evidence establishing that the Group 1 carcinogens to which Claimant was exposed as a firefighter do not cause lung cancer. Claimant has, therefore, established that he has an occupational disease pursuant to Section 27.1(r) of the Act.

Because Claimant has established that he has an occupational disease and has met the other requirements of Section 301(f) of the Act,[9] Claimant is entitled to the statutory presumption. Accordingly, contrary to the Board's conclusion in its second decision, the burden shifted to Employer to identify "(1) the specific causative agent of [C]laimant's cancer, and [prove that] (2) exposure to that causative agent did not occur as a result of his . . . employment as a firefighter." *Sladek II*, 195 A.3d at 209. Employer has attempted to rebut the presumption through Dr. Guidotti's deposition testimony and Dr. Sandler's medical report. Dr. Guidotti's opinion only rejected the notion that Claimant's cancer was caused

---

[9] Both parties have stipulated that Claimant has served continuously as a firefighter for four years or more and passed a physical examination before engaging in firefighting duties, which revealed no evidence of cancer. Further, the WCJ has accepted that Claimant had direct exposure to a Group 1 carcinogen. Lastly, there is no dispute that Claimant filed his claim petition within 300 weeks of his last day of employment.

15

by any exposures to carcinogens as a result of firefighting—he did not offer an opinion concerning the specific cause of Claimant's cancer. Dr. Guidotti's opinion is, therefore, insufficient to rebut the statutory presumption under *Sladek II*.

Dr. Sandler's opinion also rejected the notion that Claimant's cancer was caused by exposures to carcinogens during firefighting, concluding, instead, that "[Claimant's] diagnosed lung cancer is *most likely* caused by his significant personal risk factors, the most important being his personal smoking history." (R.R. at 894 (emphasis added).) Dr. Sandler's opinion lacks the level of certainty required by law to establish a causal connection between Claimant's nonemployment-related risk factors and his cancer. *See Lewis v. Workmen's Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 498 A.2d 800, 802 (Pa. 1985) ("Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause.").[10] Consequently, Dr. Sandler's opinion is also insufficient to rebut the evidentiary presumption.

## III. CONCLUSION

For the reasons set forth above, Claimant established that he was entitled to the statutory presumption under Section 301(f) of the Act, being that his lung cancer was caused by the occupation of firefighting. Employer failed to rebut the statutory presumption with substantial competent evidence that Claimant's

---

[10] Indeed, in reversing the First WCJ Decision and awarding benefits to Claimant, the Board reached this very same conclusion: "Dr. Sandler's opinion, when reviewed as a whole, lacks the certainty necessary to overcome the presumption that Claimant's cancer was caused by firefighting." (C.R., Item No. 9, at 11.) It is not entirely clear to the Court why the Board reached a contrary conclusion in its review of the Second WCJ Decision following remand. To put it simply, the Board got it right the first time.

16

cancer was caused by something other than his workplace exposure to IARC Group 1 carcinogens linked to lung cancer.  Accordingly, Claimant is entitled to benefits under the Act, and we reverse the Board's December 11, 2018 order to the contrary.


 

 

P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Wayne Deloatch, : 
                Petitioner : 
                 : 
          v. :   No. 1684 C.D. 2018
                 : 
Workers' Compensation Appeal : 
Board (City of Philadelphia), : 
                Respondent : 

# **O R D E R**

AND NOW, this 3rd day of January, 2020, the order of the Workers' Compensation Appeal Board, dated December 11, 2018, is hereby REVERSED.

 

 

_____
P. KEVIN BROBSON, Judge